UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 21-cr-60193-BLOOM

UNITED STATES OF AMERICA,

      Plaintiff,

v.

KIEON JENNINGS,

      Defendant.

_____/

## ORDER DENYING MOTION TO SUPPRESS

**THIS CAUSE** is before the Court upon Defendant Kieon Jennings' ("Defendant" or "Jennings") Motion to Suppress Physical Evidence, ECF No. [25] ("Motion"). Plaintiff the United States of America ("Plaintiff" or "Government") filed a Response in Opposition, ECF No. [30] ("Response"), to which Defendant filed a Reply, ECF No. [32] ("Reply"). In addition, the Court held an evidentiary hearing on October 22, 2021, and considered the testimony and other evidence together with oral argument. Regarding the issue as to whether the driveway should be considered curtilage, the parties were requested and submitted further briefing. Plaintiff filed a Supplemental Response, ECF No. [41], and Defendant filed a Supplemental Brief, ECF No. [43-1]. The Court has carefully reviewed the Motion, the supporting and opposing filings, the record in this case, the applicable law, and is otherwise fully advised. For the reasons set forth below, the Motion is denied.

## I.    BACKGROUND

On May 19, 2021, an officer with the Broward County Sheriff's Office observed Jennings driving a black Chevy Malibu. ECF No. [25] at 2. The officer believed Jennings' license was

suspended and confirmed the license suspension through the Driver and Vehicle Information Database (DAVID). *Id.* The officer conducted a traffic stop as Jennings was backing out of his home's driveway. *Id.* The front wheels of Jennings' vehicle were on the front portion of the driveway closer to the home; the rest of the vehicle was "on the sidewalk" and "the back portion of the driveway." ECF No. [38] at 42; *see also* ECF No. [40-1]. Jennings exited the vehicle, leaving the driver's side door open, and was immediately detained by officers on the public sidewalk. ECF No. [40-1]. Jennings was arrested for the misdemeanor offense of driving with a suspended license, pursuant to Florida Statute § 322.34(2)(a). ECF No. [30] at 3.

Following Defendant's warrantless arrest, officers searched Defendant's person and found seven Percocet pills. ECF No. [25] at 2. An officer also observed a firearm in plain view on the driver's floorboard of the vehicle. *Id*. An inventory search of the vehicle revealed a scale and a bag containing fentanyl, crack, and powder cocaine. *Id*. Jennings was charged with Possession with Intent to Distribute a Controlled Substance, in violation of 21 U.S.C. § 841(a)(1), and Possession of a Firearm During and in Furtherance of a Drug Trafficking Offense, in violation of 18 U.S.C. § 924(c)(1)(A). ECF Nos. [1] at 1, [25] at 1.

On August 23, 2021, Chief Magistrate Judge John O'Sullivan issued a warrant to collect Defendant's DNA based upon a finding of probable cause, relying on Special Agent Elizabeth Morales' Affidavit. ECF No. [25-1]. In her Affidavit, Special Agent Morales asserted that "a known DNA sample from Jennings is required" to analyze the DNA swabs taken from the firearm. ECF No. [25-1] ¶ 12. At that point, the officers had swabbed the firearm found in the vehicle for DNA, ECF No. [25-1] ¶ 8, but the Affidavit did not disclose that the DNA had not been analyzed, and it was not known whether the DNA profile was of sufficient quality for comparison to the

Defendant's DNA, *see generally id.*, *see also* ECF No. [25] at 6. The agents subsequently executed the warrant and obtained oral DNA swabs from Defendant. ECF No. [25] at 1.

Defendant argues that the arrest and search of Defendant and his vehicle violated his Fourth Amendment rights. *See id*. Defendant further argues that the oral DNA swabs violated his Fourth Amendment rights. Alternatively, Defendant requests a hearing to address the alleged false statements in the officer's affidavit that led to the warrant's approval. *See id.* The Government argues that the arrest and search of Defendant and his vehicle were lawful. *See* ECF No. [30] at 1. The Government also contends that the oral DNA swabs were the product of a lawful search in accordance with a search warrant; that even if the warrant lacked probable cause, the good faith exception applied; and that Defendant is not entitled to a *Franks* hearing. *See id*.

## II.   LEGAL STANDARD

### A.  Warrantless Arrest and Search of the Home and Curtilage

In regard to searches and seizures taking place in one's home, the Supreme Court has determined that the Fourth Amendment protects "the right of a man to retreat into his own home and there be free from unreasonable government intrusion." *Silverman v. United States*, 365 U.S. 505, 511 (1961). The Supreme Court has determined that warrantless searches and seizures in one's home are presumptively unreasonable. *Payton v. N.Y.*, 445 U.S. 573, 586 (1980). Furthermore, the curtilage, "the area 'immediately surrounding and associated with the home,'" is itself "'part of the home … for Fourth Amendment purposes'" and is a constitutionally protected area. *Florida v. Jardines*, 569 U.S. 1, 6 (2013) (quoting *Oliver v. United States*, 466 U.S. 170, 180 (1983)). The Eleventh Circuit has traditionally relied on four factors set forth in the Supreme Court case *United States v. Dunn,* 480 U.S. 294, 301 (1987), to determine the outer limits of a home's curtilage in the context of a warrantless search and seizure.

> Questions about whether an area is curtilage 'should be resolved with particular reference to four factors: the proximity of the area claimed to be curtilage to the home, whether the area is included within an enclosure surrounding the home, the nature of the uses to which the area is put, and the steps taken by the resident to protect the area from observation by people passing by.'

*United States v. Stephen*, 823 F. App'x 751, 754 (11th Cir. 2020) (quoting *Dunn*, 480 U.S. at 301).

These four *Dunn* "factors are useful analytical tools only to the degree that, in any given case, they bear upon the centrally relevant consideration—whether the area in question is so intimately tied to the house itself that it should be placed under the home's 'umbrella' of Fourth Amendment protection." *Dunn*, 480 U.S. at 301.

### B. DNA Searches

The Supreme Court has determined that the collection and analysis of the person's "biological samples" is a search within the meaning of the Fourth Amendment. *See Skinner v. Railway Labor Executives' Ass'n.*, 489 U.S. 602, 618 (1989) (finding that blood tests, breath tests, and urine tests are searches under the Fourth Amendment). As such, "[w]here a search is undertaken by law enforcement officials to discover evidence of criminal wrongdoing, . . . . reasonableness requires the obtaining of a judicial warrant [and] . . . the showing of probable cause required by the Warrant Clause." *Veronica School District 47J*, 515 U.S. at 653. Evidence collected pursuant to a warrant based on a faulty probable cause determination is subject to the exclusionary rule, *see Mapp v. Ohio*, 367 U.S. 643 (1961), but the Supreme Court created an exception to the exclusionary rule when agents are acting in "good faith" while relying on the warrant, *see United States v. Leon*, 468 U.S. 897 (1984). Furthermore, if a warrant is obtained by using a false statement that was made intentionally or recklessly, then a *Franks* hearing may be necessary. *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978). Under *Franks*, a defendant must (1) make a substantial preliminary showing that the affiant deliberately or recklessly included false

statements; and (2) show that the challenged statement or omission was essential to the finding of probable cause. *Id.*

## III.   ANALYSIS

Defendant raises two arguments: (1) the arrest and search of Jennings and his vehicle violated his Fourth Amendment rights; and (2) the oral DNA swabs violated his Fourth Amendment rights. ECF No. [25]. The Government argues that the arrest and search of Defendant and his vehicle did not violate Defendant's Fourth Amendment rights because the arrest and search did not take place on Defendant's curtilage. ECF No. [41]. The Government also contends that the oral DNA swabs were obtained pursuant to a valid search warrant, and that even if the search warrant lacked probable cause, the officers were acting in good faith. *See* ECF No. [30] at 11. The Court considers each argument in turn.

### A.  Arrest and Search of Defendant and Defendant's Vehicle

As a preliminary matter, both Defendant's Motion and the Government's Response discuss whether law enforcement had probable cause to arrest Defendant. ECF Nos. [25] at 4, [30] at 4-6. According to the Government, because Defendant was an individual already known to law enforcement and because law enforcement was aware that Defendant had a suspended license, law enforcement had probable cause to arrest Defendant after observing Defendant driving a vehicle. ECF No. [30] at 6.[1] As the Government notes, the Eleventh Circuit has determined that probable cause exists when "the facts and circumstances within the officers' knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Jordan v. Mosley*, 487 F.3d 1350, 1356 (11th Cir. 2007) (quoting *Miller v. Harget*, 458

---

[1] Defendant does not dispute these factual allegations. *See generally* ECF No. [32].

F.3d 1251, 1259 (11th Cir. 2006)); ECF No. [30] at 5. Defendant, while claiming that the officers did not have probable cause, does not further substantiate the claim. *See* ECF No. [25] at 4. Therefore, based on Eleventh Circuit precedent and the facts presented at the evidentiary hearing, the Court determines that there was probable cause to arrest Defendant for driving with a suspended license.

However, even if probable cause exists, the Supreme Court has determined that warrantless searches and seizures in one's home and curtilage are unreasonable without an exception to the warrant requirement. *Payton v. New York*, 445 U.S. 573, 586 n.25 (1980) (citing *Coolidge v. New Hampshire*, 403 U.S. 443, 474-75 (1971)). In this case, there were no exceptions that would have allowed a warrantless arrest and search on curtilage. First, it is apparent that the exigent circumstances exception does not apply. *See Lange v. California*, 141 S. Ct. 2011, 2016 (2021) (holding that the pursuit of a misdemeanor suspect does not categorically qualify as an exigent circumstance justifying warrantless entry into the home). Nor do the facts of the case implicate the knock and talk exception that would ordinarily allow officers to enter the driveway to ask the suspect questions before making a warrantless arrest if necessary. *See United States v. Taylor*, 458 F.3d 1201, 1204 (11th Cir. 2006). Law enforcement did not enter the driveway to ask Defendant questions but to detain him. ECF No. [30] at 2. Further, the automobile exception does not permit the warrantless entry of a home or curtilage to search a vehicle therein. *See Collins v. Virginia*, 138 S. Ct. 1663, 1671 (2018). Finally, the plain view doctrine only applies when officers are lawfully present at the place from which they saw and seized incriminating evidence, meaning the doctrine, by itself, does not allow law enforcement to arrest Defendant on curtilage. *See Horton v. California*, 496 U.S. 128, 136 (1990).

Given the absence of any exceptions that would have allowed law enforcement to enter Defendant's curtilage to make a warrantless arrest and search, the Court must determine whether the warrantless arrest and search in this case took place outside the curtilage as the Government argues. Therefore, the Court now turns to the issue of curtilage.

As the Government rightly argues, the Eleventh Circuit has traditionally used the *Dunn* factors to determine the outer limits of a home's curtilage in the context of a warrantless search and seizure. *See Stephen*, 823 F. App'x at 754 (quoting *Dunn*, 480 U.S. at 301); ECF No. [41] at 3. However, Defendant relies *United States v. Delva*, 922 F.3d 1228, 1245 (11th Cir. 2019), to argue that a "driveway abutting the house" is presumptively curtilage. ECF No. [43-1] at 4. In *Delva*, the Eleventh Circuit briefly discussed the facts of *Collins* and stated that "the top of a driveway that 'abut[ted] the house'" was curtilage, and more generally, "the driveway abutting the house is 'an area adjacent to the home and to which the activity of home life extends, and so is properly considered curtilage.'" 922 F.3d at 1245 (discussing the facts of *Collins*, 584 U.S. at 1671). Based on the Eleventh Circuit's brief discussion of *Collins* in *Delva*, Defendant argues that any driveway abutting the house is curtilage, without relying on the *Dunn* factors. *See* ECF No. [43-1] at 4.

The Court is not persuaded by Defendant's argument for several reasons. First, Defendant's characterization of the Eleventh Circuit's discussion of *Collins* in *Delva* is incomplete. As the Government argues, in *Collins*, the Supreme Court parsed the driveway into separate portions, contrary to Defendant's characterization of the Eleventh Circuit's interpretation of *Collins*. *See* 138 S. Ct. at 1671; ECF No. [41] at 4. The Supreme Court noted in *Collins* that it was analyzing the "top *portion* of the driveway" and held that "a partially enclosed top portion of the driveway that abuts the house" was curtilage. *Collins*, 138 S. Ct. at 1667-71 (emphasis added). The Supreme

Court did not, however, determine whether other portions of the driveway were curtilage. *See id.* In only analyzing the partially enclosed top portion of the driveway, *Collins* implicitly recognized that there could be parts of the driveway that are curtilage and other parts that are not. *See id.*

Second, as the Government points out, the Eleventh Circuit's most recent decision on the matter is instructive. *See Stephen*, 823 F. App'x at 754. In *Stephen*, the Eleventh Circuit determined, through its *Dunn* analysis, that some portions of the driveway were curtilage while other portions of the same driveway were not curtilage. *See id.* The Eleventh Circuit stated that "[t]he curtilage *may* include the portion of a driveway that is adjacent to the home and to which the activity of home life extends." 823 F. App'x at 754 (quoting *Collins*, 138 S. Ct. at 1671) (internal quotation marks omitted) (emphasis added). In finding that a portion of the driveway was curtilage, the Eleventh Circuit held that a portion at the end of the driveway was not curtilage even though the driveway was only three or four car lengths long. *Stephen*, 823 F. App'x at 755. As such, it is apparent that portions of the driveway, especially portions farther from the home, are not always curtilage.

Additionally, Defendant argues that the *Dunn* factors should be given less weight because the majority opinions in *Collins* and *Lange* do not discuss the *Dunn* factors. 138 S. Ct. at 1670-71; 141 S. Ct. at 2016. However, the primary issue before the Supreme Court in those cases was not the definition of curtilage but rather, the automobile exception and the pursuit of a fleeing suspect exception, respectively. 138 S. Ct. at 1671; 141 S. Ct. at 2016. The Supreme Court cases did not require an in-depth analysis of curtilage, which is why the cases did not rely on the *Dunn* analysis. In *Collins*, the police entered the "partially enclosed top portion of the driveway" and removed a tarp from a motorcycle to determine if it was stolen. 138 S. Ct. at 1667. It was readily apparent that the area was curtilage without relying on the *Dunn* factors. In *Lange*, the police entered a

garage attached to the home. 141 S. Ct. at 2013. Again, it was readily apparent that the area was curtilage without relying on the *Dunn* factors. Unlike those cases, in this case, the Court must engage in the traditional *Dunn* analysis because the facts raise the issue of curtilage.

Defendant relies on *United States v. Mitchell*, 503 F. App'x 751 (11th Cir. 2013), and *United States v. Barber*, No. CR 17-0281-WS, 2018 WL 912272 (S.D. Ala. Feb. 15, 2018), and argues that the Court should look to cases where courts have interpreted the term curtilage in search warrants. ECF No. [43-1] at 7-8. In *Mitchell*, the pertinent issue was whether a search warrant that permitted officers "to enter the said premises and the curtilage thereof and any vehicles parked thereon, and any persons present and then and there to search diligently for the property described in this warrant" gave the officers the authority to search a car in the driveway. 503 F. App'x at 753. The Eleventh Circuit determined that the officers had the right to search the driveway because the warrant authorized a search of the curtilage. *Id* at 755. By this, Defendant argues that driveways should be considered curtilage. ECF No. [43-1] at 7-8. Notably, however, there is no description of the driveway in *Mitchell*. *See generally* 503 F. App'x 751. Given the Eleventh Circuit's subsequent decision in *Stephen*, in which the Eleventh Circuit parsed portions of the driveway to determine curtilage, the Court cannot conclude based on a nondescript driveway in *Mitchell* that any driveway, no matter the size or character, is always curtilage. Furthermore, the Court finds material that the Eleventh Circuit's analysis in *Mitchell* was related to a search warrant's definition of the term curtilage, which has not traditionally required an analysis of the *Dunn* factors. 503 F. App'x 751. As the Government correctly argues, in the context of a suppression hearing, the Eleventh Circuit has continued to apply the *Dunn* factors. *See, e.g.*, *Stephen*, 823 F. App'x at 754; ECF No. [41] at 3.

Defendant further relies upon a non-binding decision from the Southern District of Alabama, *Barber*, 2018 WL 912272. In *Barber*, the court held that if an automobile was parked "adjacent to the back door entrance of the apartment," then a search of the automobile took place on the curtilage. *Id.* at *5. Notably, however, the facts of *Barber* did not require the court to make a determination regarding the driveway in its entirety, but merely the area adjacent to the back door of the apartment. *See generally* 2018 WL 912272. When the Eleventh Circuit was squarely presented with the issue of whether the entire driveway, not just part of the driveway adjacent to the backdoor of the apartment, was curtilage, the Eleventh Circuit parsed the driveway to portions that constituted curtilage and other portions that did not constitute curtilage. *See Stephen*, 823 F. App'x at 754; ECF No. [41] at 4. As such, the Court considers Defendant's reliance on *Barber* to be unpersuasive.

Accordingly, the Court considers the four *Dunn* factors to be the pertinent analysis in determining the reach of the home's Fourth Amendment protection.

### 1. Proximity of the Area to the Home

First, the Court considers the proximity of the area claimed to be curtilage to the home. *See Dunn*, 480 U.S. at 301. When analyzing the first *Dunn* factor, the Eleventh Circuit has traditionally examined both the distance from the home and the extent to which the disputed area is spatially separate, or set off, from the home by other structures. *See Taylor*, 458 F.3d at 1207 ("[a]n area that is substantially removed from and separated by other structures from the house is not within its curtilage."). In terms of distance, "[n]either the Supreme Court nor the Eleventh Circuit has defined, in numerical . . . terms, the phrase 'close proximity.'" *United States v. Garrott*, 745 F. Supp. 2d 1206, 1209 (M.D. Ala. 2010). The evidence presented at the hearing reflects that the lot

where the home is situated is small. ECF No. [37-1]. The driveway is less than three car lengths long. ECF No. [37-5]. Therefore, the entire driveway was near the home.

Undoubtedly, the portion of the driveway and the sidewalk where the search and seizure occurred are further from the home than the covered portion near the front door. ECF No. [37-1]. Additionally, the driveway is segmented by a public sidewalk that separates and passes through the driveway. The police body cam video establishes that the seizure of the Defendant occurred outside the erected fence. ECF No. [40-1]. Nonetheless, the Government does not contest the proximity factor. *See generally* ECF No. [41]. Therefore, even after considering the spatial separation between the top of the driveway and the portion of the driveway near the sidewalk on which the arrest and search occurred, given the small size of the lot, the first factor weighs in favor of a finding that the area is curtilage.

## 2. Enclosure

Second, the Court considers whether the area in which the search and seizure occurred is included within an enclosure surrounding the home. *See Dunn*, 480 U.S. at 302. Courts "[v]iewing the physical layout of [the property] in its entirety" must determine what "serves to demark a specific area of land immediately adjacent to the house that is readily identifiable as part and parcel of the house." *Id.* When viewing the physical layout of the subject property, the Court determines that the only clear boundary demarking a specific area of land is the front yard fence. ECF No. [37-1]. As the evidence revealed, the arrest took place outside the fenced area. ECF No. [41] at 4; *see also* ECF No. [40-1].

Defendant argues that the Court should ignore the front yard fence in an urban or suburban setting, relying on *Garrott*, 745 F. Supp. 2d at 1211-12. ECF No. [43-1] at 17 n.76. The Court is not persuaded. In *Garrott*, the court found that the existence of a partially constructed fence

weighed in favor of finding that a search – that took place within the fenced area – took place on the curtilage. 745 F. Supp. 2d at 1211-12. The court found that the defendant's fence "evinces an intent to create a boundary, discourage physical intrusion, and maintain privacy." *Id*. at 1211. In this case, because Defendant's arrest took place *outside* the fenced area, *Garrott* ultimately undermines, rather than advances, Defendant's argument.

Relying on *United States v. Jenkins*, 124 F.3d 768, 773 (6th Cir. 1997), Defendant argues that the Court should look to other "natural enclosures" of the property line and the fact that the area between the sidewalk and the road is well-kept to indicate that the curtilage extends to the public street rather than the fence. ECF No. [43-1] at 19, n.81. In *Jenkins*, the court looked to the fact that the lawn was well-maintained to find that the area in question was curtilage. 124 F.3d at 773. However, *Jenkins* is distinguishable because the area in question in *Jenkins* was not only well-maintained but also enclosed by a fence. *See id.* The fact that the area in question was well-maintained was only one of the considerations. *See id.* In this case, although the area between the sidewalk and the public street is well-maintained, it is certainly not enclosed. ECF No. [37-1]. Given that the fence is a clearly marked expression of the owner's claim to private property with attendant expectations of privacy, *see Garrott*, 745 F. Supp. 2d at 1211, the Court finds Defendant's argument that the curtilage extends to the well-maintained area beyond the fence is unavailing.

Defendant lastly argues that the Court should not focus on the fence and should instead examine the neighborhood to determine how residents mark the outer limits of the property. ECF No. [43-1] at 17-19. Defendant cites *United States v. Diehl*, 276 F.3d 32, 40 (1st Cir. 2002); *United States v. Reilly*, 76 F.3d 1271, 1278 (2d Cir. 1996); and *Daughenbaugh v. City of Tiffin*, 150 F.3d 594, 599 (6th Cir. 1998) for the proposition that an artificial barrier such as a fence should not be

the dispositive factor. ECF No. [43-1] at 17. The cases cited, however, make clear that courts have looked to the surrounding context only when there were no artificial enclosures that could aid the curtilage analysis, *Diehl*, 276 F.3d at 40, *Daughenbaugh*, 150 F.3d at 599, or when the artificial enclosure had partially broken down, *Reilly*, 76 F.3d at 1277-78. Given the existence of the fence in this case, the Court sees no reason to look further in its analysis of the second factor.

### 3.   Nature of Usage

Third, the Court considers the nature of the area's usage. *See Dunn*, 480 U.S. at 301. In addressing this factor, the Court recognizes that the extent to which activities of the home extend outside vary in suburban versus rural settings. *See United States v. Seidel*, 794 F. Supp. 1098, 1104 (S.D. Fla. 1992). Defendant argues that the area is an extension of the home because there is outdoor furniture. ECF Nos. [37-4], [43-1] at 20. The Government counters that the portion of the driveway in question is used by the public to traverse from house to house and is, therefore, not curtilage. ECF No. [41] at 4.

The evidence reflects that there is one chair located in the area immediately outside the front window, which is connected to the driveway. However, the lower end of the driveway is separate in terms of its use. ECF No. [37-4]. The lower end of the driveway is used by the public to traverse through the area, which is not considered to be an intimate activity associated with the home. ECF No. [37-5]. The Court finds *Stephen*, 823 F. App'x at 755, and *United States v. Howard*, No. 20-20147-CR, 2021 WL 3883919, at *1 (S.D. Fla. Aug. 31, 2021), to be instructive on this matter. In *Stephen*, the Eleventh Circuit noted that the portion of the driveway that is "a common area used by the residents . . . solely for parking cars" is not curtilage. 823 F. App'x at 755. In *Howard*, the court found that when lawn chairs decorated the covered and gated carport, the carport was curtilage as it was used for lounging and related purposes. 2021 WL 3883919, at

\*5. In this case, considering the lone chair by the front door, the area in question – the end of the driveway – is more like the area in *Stephen* used for parking than the carport in *Howard* to which the activity of home life extended. 823 F. App'x at 755; 2021 WL 3883919, at \*5. Simply put, one chair at the top, covered portion of the driveway does not transform the nature of the usage of the entire driveway into an extension of the intimate activities of the home. Therefore, the third factor weighs against a finding that the area is curtilage.

### 4.   Steps to Protect from Observation

Fourth, the Court considers the steps taken by the resident to protect the area from observation by people passing by. *See Dunn*, 480 U.S. at 301. The Court recognizes that this final factor should be given less weight given the characteristics of the neighborhood where no one has fenced the bottom of the driveway. *See Seidel*, 794 F. Supp. at 1104; ECF No. [43-1] at 21. Nonetheless, the Court notes that Defendant could have taken steps to protect the front of the home by erecting a fence or planting foliage to create a natural enclosure. However, as the Government argues, the area was left clearly visible to the public, indicating that the intimate activities of the home did not extend to the lower driveway. *See Stephen*, 823 F. App'x at 755; ECF No. [41] at 4. Thus, the fourth factor weighs against a finding that the area is curtilage.

On balance, the portion of the driveway and sidewalk beyond the fenced-in front yard is not in an area intimately linked to the home and therefore not curtilage. As such, the Fourth Amendment protection does not extend to the end of the driveway.[2] Because officers did not enter the home's curtilage to arrest Jennings, the arrest and the subsequent search were reasonable.

---

[2] The Court recognizes that the analysis may have been different if Defendant had been arrested on the portion of the driveway closer to the home.

### B. Collection of Defendant's DNA

#### 1. Probable Cause

The next issue before the Court is whether the DNA collected from Defendant violated his Fourth Amendment rights. The Supreme Court has determined that the collection and analysis of the person's "biological samples" is a search within the meaning of the Fourth Amendment. *See Skinner*, 489 U.S. at 618. As such, the collection of DNA requires a search warrant based on probable cause. *See Veronica School District 47J*, 515 U.S. at 653.

In this case, Defendant argues that the DNA sample was not reasonable because the DNA warrant was based on a probable cause determination that depended on a false or omitted statement. ECF No. [25] at 5-6. Special Agent Morales stated in her Affidavit that:

> In order to conduct the analysis of DNA samples recovered from the firearm retrieved from the floorboard of the vehicle [Defendant] was in at the time of the arrest, and which was in close proximity to the narcotics recovered in the drivers [*sic*] seat, a known DNA sample from [Defendant] is required.

ECF No. [25-1] ¶ 12. Defendant contends that this statement was insufficient for a finding of probable cause because there was no proffer that any DNA samples recovered from the evidence were analyzed beforehand. *See generally id.*; *see also* ECF No. [25] at 6. Defendant notes that the FBI has stated, as a matter of procedure, that when it comes to the processing of DNA samples, the first step after discovering DNA in connection to a crime is to develop a profile based on the DNA from the evidence before collecting DNA samples from the defendant. ECF No. [25] at 8 (citing Frequently Asked Questions on CODIS and NDIS, Federal Bureau of Investigations). Contrary to FBI procedure, law enforcement in this case did not develop a profile from the DNA found on the firearm. *See id.* at 6. The Government does not contest that Special Agent Morales did not first develop a profile from the DNA on the firearm before seeking to collect Defendant's DNA samples. *See* ECF No. [30] at 12.

As such, the Court agrees that Defendant. Special Agent Morales' Affidavit failed to sufficiently explain the type of analysis, if any, that was performed on the DNA found on the firearm. *See generally* at [25-1]. The Court considers this to be a shortcoming given the FBI's own procedure in analyzing the DNA from the evidence beforehand. Previous courts have found that law enforcement must show a "fact-specific, case-specific application based on the theory that there is probable cause to believe that the DNA obtained from [Defendant] will yield relevant evidence." *U.S. v. Castillo*, No. 16-20626-CR, 2016 WL 6158133, at *3 (S.D. Fla. Oct. 24, 2016) (finding that because the government had not yet confirmed that any viable DNA was found on the firearm, the government had not met the burden to establish probable cause for the DNA search warrant); *see also United States v. Marshall*, No. 11-CR-00381, 2020 WL 2994020, at *2 (W.D.N.Y. Jul. 20, 2012) (holding that a DNA sample gathered from the evidence must be "of a sufficient quality to be used for comparison purposes with the DNA the government seeks to obtain from defendants . . ."). In sum, because the DNA sample from the firearm had not yet been analyzed, there was no probable cause to believe that the DNA from Defendant would yield relevant evidence.

The Government relies on *Schmerber v. California*, 384 U.S. 757, 771 (1966), to argue that there was probable cause that Defendant committed a crime, and the probable cause that Defendant committed a crime established the necessary probable cause to collect DNA samples from Defendant. ECF No. [30] at 11. However, the Court is not persuaded because probable cause that Defendant committed a crime does not create probable cause to collect DNA samples. *Castillo*, 2016 WL 6158133, at *3. As stated above and as Defendant argues, there must be probable cause that a DNA swab will yield probative evidence, not probable cause generally that Defendant has committed a crime. *See id.*; ECF No. [32] at 3. Furthermore, as Defendant correctly argues, the

Government's reliance on *Schmerber* is unpersuasive as the case involved an emergency, namely the destruction of evidence, that allowed the officers to do a blood test. *Schmerber*, 384 U.S. at 771; ECF No. [32] at 3-4. In *Schmerber*, the defendant was under arrest for DUI, and since his blood alcohol level would immediately begin to diminish, the court ruled that the blood test was reasonable. *Id.* at 770. Unlike *Schmerber*, there was no emergency that precipitated the immediate need for Defendant's DNA samples. *See id.*

The Government also contends that the oral swabs were only a minor intrusion without any risk of pain or embarrassment and that the DNA search was reasonable. ECF No. [30] at 11-12. The Court finds the discussion to be inapposite because the Supreme Court has already determined that the threshold question for the reasonableness of a search depends upon probable cause. *See Winston v. Lee*, 470 U.S. 753, 760 (1985) (holding that the threshold question for the reasonableness of a search depends upon probable cause). In this case, the Government failed to set forth sufficient facts in its Affidavit to establish probable cause for a DNA search. As such, the DNA search was presumptively unreasonable, irrespective of how unintrusive the oral swab was in this case.

Finally, the Government argues that it would be inefficient to collect Defendant's DNA after analyzing the DNA from the evidence. ECF No. [25] at 12-13. The Government's contention is that it would be more efficient to collect the DNA, regardless of whether any DNA was collected from the evidence, and then to analyze the collected DNA afterward and compare it with the DNA collected from the evidence, if any. *See id.* The Court is not persuaded. The Government's recommended procedure, taken to its logical conclusion, would allow the collection of DNA from every arrested person. Some arrested persons will inevitably not leave sufficient DNA on the evidence, rendering their collections of DNA useless. On the other hand, Defendant's

recommended procedure would only require the collection of DNA when there is sufficient DNA recovered from the evidence. *See* ECF No. [32] at 4. Just by the sheer number of DNA samples that would need to be collected under the Government's recommended procedure, the Government's recommended procedure is less efficient, not more efficient. Furthermore, even if the Government's recommended procedure is more efficient, it is contrary to the FBI's own procedure, which presumably takes into account the most efficient use of law enforcement resources. *See* ECF No. [25] at 8 (citing Frequently Asked Questions on CODIS and NDIS, Federal Bureau of Investigations).

Overall, the DNA search warrant was not based on probable cause due to insufficiencies in Special Agent Morales' Affidavit, and therefore the DNA search was not reasonable.

### 2.  Good Faith Exception

The Court now turns to the good faith exception. The Government argues that the good faith exception applies even if the search warrant was not based on probable cause. ECF No. [30] at 13-15. Defendant notably does not address the good faith exception. *See generally* ECF Nos. [25]; [32]. Under the good faith exception, evidence obtained pursuant to a seemingly valid search warrant that is later determined to be defective for the lack of probable cause is admissible as long as the officers reasonably relied on the warrant. *See Leon*, 468 U.S. at 897. In *Herring v. United States*, 555 U.S. 135 (2009), the Supreme Court found that the exclusionary rule did not require suppression of drugs and a firearm found by officers in a search incident to an illegal arrest of a defendant, because the officers who arrested the defendant reasonably relied on incorrect information from a sheriff's department warrant clerk that a warrant was outstanding for the defendant's arrest. Here, although the Government did not provide sufficient evidence for probable cause, much like the officers in *Herring*, law enforcement officers acted in good faith reliance of

the DNA search warrant when collecting DNA from Defendant. Therefore, the good faith exception applies, and the evidence is otherwise admissible.

### 3. *Franks* Evidentiary Hearing

Finally, Defendant contends that a *Franks* hearing is necessary. ECF No. [25] at 10. If a warrant is obtained using a false statement made intentionally or recklessly, then a *Franks* hearing may be necessary. *Franks*, 438 U.S. at 155-56. Under *Franks*, the Defendant must (1) make a substantial preliminary showing that the affiant deliberately or recklessly included false statements; and (2) show that the challenged statement or omission was essential to the finding of probable cause. *Id.*

In this case, Special Agent Morales' statement about the need for a DNA swab was insufficient for probable cause as noted above, but Defendant has failed to make a substantial preliminary showing that the insufficient statement in the Affidavit was deliberate or reckless. Furthermore, the Government correctly notes that the statement was, technically, not a false statement. ECF No. [30] at 17. A DNA swab from Defendant is necessarily required for a comparative analysis of the DNA from the firearm and the DNA from Defendant's mouth.[3] As noted above, it is only when the statement is read alongside FBI guidelines that the statement is insufficient for a finding of probable cause because the statement implies that law enforcement already analyzed the DNA from the firearm. The statement, by itself, without referring to the FBI guidelines, does not constitute a deliberate or reckless false statement. Therefore, the single

---

[3] Defendant attempts to draw a distinction between an "analysis" of the DNA from the firearm, which does not require DNA from Defendant, and a "compar[ative]" analysis of the DNA from the firearm and the DNA from Defendant's mouth, which does require DNA from Defendant. ECF No. [32] at 4. The Court finds the distinction to be immaterial because, at the end of the day, the Government will ultimately require Defendant's DNA to complete its analysis. The fact that Defendant attempts to draw this fine distinction also undermines its argument that Special Agent Morales deliberately or recklessly made a material false statement when claiming the need for Defendant's DNA.

statement, without a further showing of deliberate or reckless falsity, does not justify a *Franks* hearing. Because Defendant fails to establish the first prong of the *Franks* test, an analysis of the second prong is not necessary. Nonetheless, the Court notes that even if the challenged statement was removed, given the other allegations in the Affidavit, including the proffer that DNA swabs were taken from the firearm, ECF No. [25-1] ¶ 8, and the need for DNA analysis to further the investigation, *id.* ¶ 13, the Court determines that the challenged statement was not essential to Chief Magistrate Judge O'Sullivan's decision. As such, Defendant is not entitled to a *Franks* hearing.

## IV.   CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** that Defendant's Motion to Suppress, **ECF No. [25]**, is **DENIED.**

**DONE AND ORDERED** in Chambers at Miami, Florida, on November 9, 2021.

_____

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record